**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

EDUARDO CHAVEZ CHAVEZ,

Petitioner,

v. No. 2:26-cv-01598-DHU-LF

U.S. ATTORNEY GENERAL; MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland Security; MARY DE ANDA-YBARRA, Director, El Paso Field Office, Enforcement and Removal Operations; FACILITY WARDEN; TODD LYONS, Acting Director, El Paso Field Office, Enforcement and Removal Operations,

Respondents.

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

THIS MATTER is before the Court on Petitioner Eduardo Chavez Chavez's *pro se* Petition for Writ of Habeas Corpus ("Petition"). Doc. 1. For the reasons below, the Petition is **DENIED.**

## I. BACKGROUND

Petitioner, a citizen of Cuba, was ordered removed on June 14, 2010. Doc. 1 ¶ 11; Doc. 8 at 1-2. He did not appeal this decision, so it became final on that date. Doc. 1 ¶ 20; Doc. 8 at 2. Thereafter, Petitioner spent some time living freely in the United States, until his release was revoked and he was taken into Immigration and Customs Enforcement ("ICE") custody on November 18, 2025. Doc. 1 ¶ 11; Doc. 8 at 2.

ICE then sought to execute Petitioner's Order of Removal. On December 16, 2025, the Cuban Government denied Petitioner repatriation to Cuba. Doc. 8 at 2 (citing Doc. 8-1 ¶ 7a). On January 19, 2026, Petitioner was nominated for third country removal to Mexico. Doc. 8-1 ¶ 7c. He was then transferred to El Paso, Texas, to effectuate his removal to Mexico. Doc. 8 at 2 (citing

Doc. 8-1 ¶¶ 7b-7c). When Petitioner was informed of his removal to Mexico, Petitioner indicated that he would not comply, and he refused to sign Form I-229a, the Warning for Failure to Depart. *Id.* (citing Doc. 8-1 ¶¶ 7e, 10).[1]

Petitioner was eventually transferred to the Otero County Processing Center in Chaparral, New Mexico, where he remains detained. Doc. 1 at 1. He subsequently filed the instant Petition.

## II.
## LEGAL STANDARDS

Habeas relief is available when a person "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

Generally, when a noncitizen becomes subject to a final order of removal, the Department of Homeland Security ("DHS") "must physically remove him from the United States" within 90 days. *Johnson v. Guzman Chavez*, 594 U.S. 523, 528, 141 S.Ct. 2271 (citing § 1231(a)(1)(A)). This is commonly referred to as the "removal period." *Id.* During the removal period, DHS "shall detain the [noncitizen]" as it conducts the removal. § 1231(a)(1)-(2). If DHS does not remove the noncitizen during the removal period, the noncitizen must be released "pending removal . . .  subject to supervision under regulations prescribed by the Attorney General." § 1231(a)(3).

Under Section 1231, a noncitizen's 90-day removal period "may be extended in at least three circumstances." *See Johnson*, 594 U.S. at 528-29 (citing §§ 1231(a)(1)(C), (c)(2)(A), (a)(6)). This extended period is commonly referred to as the "post-removal-period." *Johnson*,

---

[1] In his Petition, Petitioner alleges that he has cooperated fully with all efforts by ICE to remove him. Doc. 1 ¶ 16. However, this assertion is contradicted by the evidence presented in the Government's Response, including a copy of a Notice of Removal to Mexico pertaining to Petitioner and a declaration from an ICE Deportation Officer describing Petitioner's failure to comply with immediate efforts to remove him to Mexico. Docs. 8-1 and 8-2.

594 U.S. at 529. Section 1231, however, "does not permit indefinite detention." *Zadvydas v. Davis*, 533 U.S. 678, 689, 701, 121 S.Ct. 2491 (2001). The post-removal period is, instead, limited to "a period reasonably necessary to bring about [the noncitizen's] removal from the United States," which is presumptively 6 months, or one 180 days. *Id.* [2] "After that point, if the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must either rebut that showing or release [him]." *Johnson*, 594 U.S. at 529; *see also* 8 C.F.R. § 241.13. To satisfy his burden of providing good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the noncitizen need not "show the absence of *any* prospect of removal—no matter how unlikely or unforeseeable." *Zadvydas*, 533 U.S. at 702. "And for detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.* at 701.

If the noncitizen's removal is not reasonably foreseeable, the Court "should hold continued detention unreasonable and no longer authorized by statute." *Id.* at 699-700. "In that case, . . . the [noncitizen's] release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the [noncitizen] may no doubt be returned to custody upon a violation of these conditions." *Id.* at 700.

## III.
## DISCUSSION

Petitioner argues that his removal to Cuba is not significantly likely in the reasonably foreseeable future, so his continued detention violates the Immigration and Nationality Act

[2] "Although not expressly stated, the Supreme Court appears to view the 6-month period to include the 90-day removal period plus 90 days thereafter." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2006).

("INA"), 8 U.S.C. § 1231(a), and the Due Process Clause. Doc. 1 ¶¶ 21-27. He requests a Writ of Habeas Corpus ordering his immediate release from custody. *Id.* at 9.

The Court first finds that the presumptively reasonable 6-month period of detention has expired. Petitioner was re-detained on November 18, 2025, so at the time the Petition was filed, Petitioner had been detained for exactly 6 months. As of today, Petitioner has been continuously detained for over 9 months.

The Court next finds that Petitioner has *not* shown that there is no significant likelihood of removal in the reasonably foreseeable future. The Petition alleges that ICE has not been able to remove Petitioner to Cuba or any third country. *Id.* ¶¶ 15, 22. Petitioner also alleges that he has complied with all removal efforts. *Id.* ¶ 16. However, the evidence attached to the Petition does not demonstrate that Petitioner cannot be removed to Cuba or another country. Instead, it shows that ICE re-detained him with the intention of removing him promptly. *See id.* at 17-19. There is also no indication in the Petition or attached evidence that Petitioner has protection from removal to Cuba. The Petition also includes a Notice of Removal to Mexico, issued in December 2025, but this appears to have been issued to a different person. *Id.* at 20-21. Petitioner has provided no evidence demonstrating why his removal to Cuba, Mexico, or any other country is unlikely or impracticable. This falls short of his burden under *Zadvydas*.

Even if Petitioner provided good reason to believe there is no significant likelihood of his removal in the reasonably foreseeable future, the Government has responded with sufficient evidence to rebut this showing. Respondents included with their response a Declaration from a Deportation Officer detailing the Government's efforts to remove Petitioner from the country. *See* Doc. 8-1 ("Carroll Declaration"). The Carroll Declaration acknowledges that Petitioner was denied repatriation to Cuba. *Id.* ¶ 7b. The Declaration also indicates, however, that the Government of

Mexico has agreed to accept noncitizens denied repatriation to Cuba and that the United States Government is actively trying to remove Petitioner to Mexico. *Id.* ¶¶ 7c-7f, 9, 12. The likelihood of Petitioner's removal to Mexico is further evidenced by a Notice of Removal produced by the Government, dated January 20, 2026, stating that ICE intends to remove him to Mexico. Doc. 8-2.

Additionally, the Government has produced evidence that Petitioner has refused to comply with removal efforts to Mexico. Specifically, according to the Carroll Declaration, Petitioner has indicated he will not comply with removal efforts to a third country and refused to sign the Form I-229a, Warning for Failure to Depart. Doc. 8-1 ¶¶ 7e, 8, 10. At this time, Petitioner's refusal to comply with removal efforts appears to be the only barrier to his removal from the United States. This does not make Petitioner's removal unlikely such that his continued detention is unlawful. Section 1231 requires extension of the 90-day removal period and permits continued detention "if the [noncitizen] fails or refuses to make timely application in good faith for travel or other documents necessary to the [noncitizen's] departure or conspires or acts to prevent [their] removal." 8 U.S.C. § 1231(a)(1)(C). Multiple courts have reconciled this with *Zadvydas* and found that, when a noncitizen's refusal is the only thing preventing his own removal, continued detention is warranted by the statute and does not offend the Due Process Clause. *See, e.g., Lema v. INS*, 341 F.3d 853, 856 (9th Cir. 2003) (reasoning that when a noncitizen fails to comply with efforts to remove him, he cannot meet his burden of showing there is no significant likelihood of removal in the reasonably foreseeable future); *Glushchenko v. U.S. Dep't of Homeland Security*, 566 F. Supp. 3d 693, 711 (W.D. Tex. 2021) (same); *Riley v. Greene*, 149 F. Supp. 2d 1256, 1262 (D. Colo. 2001) (finding the 6-month period under *Zadvydas* should be tolled when a noncitizen intentionally delays their deportation).

In his reply, Petitioner argues that ICE's policy of removing citizens to a third country "without notice and opportunity to seek fear-based protection" violates the Due Process Clause and is arbitrary and capricious under the Administrative Procedure Act ("APA"). Doc. 9 at 1-2. He also reiterates his argument under *Zadvydas*. *Id.* at 2. The INA authorizes third-country removal to a "country with a government that will accept the [noncitizen]" if removal is "impracticable, inadvisable, or impossible" to the noncitizen's home country, or any other country in which the noncitizen is a citizen, subject, or national; was born; or has a residence. 8 U.S.C. § 1231(b)(C).

Petitioner's argument regarding due process and third-country removal fails for two reasons. First, his assertion that he was not provided notice or an opportunity to be heard regarding ICE's intention to remove him to Mexico is contradicted by the evidence submitted in this matter, which shows that the Government provided Petitioner a Notice of Removal to Mexico in January 2026. *See* Doc. 8-2. Second, it is Petitioner's initial burden to provide good reason to believe his removal to Mexico is not reasonably foreseeable. Neither the Petition nor the reply set forth any evidence that Petitioner cannot or should not be removed to Mexico, either based on protection from removal or the existence of a more appropriate third country under § 1231(b)(C)(i)-(iii). If Petitioner wished to seek protection from removal to Mexico, he has had ample time to do so. Absent such protection, Petitioner cannot meet his burden under *Zadvydas* to establish that his removal to Mexico is not significantly likely in the reasonably foreseeable future.

## IV.
## CONCLUSION

For the reasons stated above, Petitioner's *pro se* Petition for Writ of Habeas Corpus (Doc. 1) must be **DENIED**. Additionally, because the Court is adjudicating Petitioner's Petition, Petitioner's Motion for Immediate Release (Doc. 10) is also **DENIED AS MOOT**.

The Court will issue a separate final judgment closing this civil habeas case.

**IT IS SO ORDERED.**

HONORABLE DAVID HERRERA URIAS
UNITED STATES DISTRICT JUDGE